IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

CARLTON BRANTLEY, LARRY         *
DOWDELL, MELVIN GRIFFIN,
PONDIEL MABRY, CONNIE MCCOY,    *
HAYWARD PARHAM, REGINAL
RICHARDSON, JERRY STARKS, LARRY *
THOMPSON, WILLIAM MARSHALL,          CASE NO. 4:10-CV-77 (CDL)
GODFREY BIGGERS, PATRICK         *
STROUD, CALVIN WILLIAMS, HENRY
CRAWFORD[1] and JOHN DOE,[2]     *

      Plaintiffs,                *

vs.                              *

MUSCOGEE COUNTY SCHOOL           *
DISTRICT, DON A. COOPER, JR.,
KINARD LATHAM, CAROL FRENCH,     *
MARIE STRINGFELLOW, THOMAS M.
SHELLNUTT SR., JERRY DUCK and    *
JOHN DOE,[3]
                                 *
      Defendants.

O R D E R

---

[1]Henry Crawford was not initially included as a plaintiff in this action, and no formal motion to add him has been filed. The Court, however, implicitly allowed him to be added as a party when it permitted Plaintiffs to file their Second Amended Complaint. He shall be treated as a named plaintiff.

[2]Plaintiffs have included "John Doe" plaintiffs and defendants with no justification. The "John Doe" plaintiffs and defendants are hereby dismissed. *See* Fed. R. Civ. P. 10(a) ("Every pleading must . . . name all the parties[.]"); *see also Plaintiff B v. Francis*, 631 F.3d 1310, 1315 (2011) (stating that Rule 10(a) "protects the public's legitimate interest in knowing all of the facts involved, including the identities of the parties" and "creates a strong presumption in favor of parties' proceeding in their own names") (internal quotation marks omitted).

[3]*See supra* note 2.

In a sweeping complaint, many of the Muscogee County School District's ("School District") lowest paid current and former employees accuse the School District of engaging in a pattern of racial discrimination that relegated certain black employees to a modest retirement system while manipulating the rules to make a more generous retirement plan available to similarly-situated white employees. According to Plaintiffs' Second Amended Complaint, the School District has two retirement systems available to its employees. One system, which provides more generous benefits, is only available to teachers and supervisory employees. The other system provides more modest benefits to all non-supervisory employees. Plaintiffs are current and former School District employees who were placed in the more modest, non-supervisor retirement system. They allege that they were placed in this system, rather than the more generous one, because they are black, and that the School District and some of its employees fraudulently prevented them from taking the appropriate steps to become eligible for the more generous retirement plan. Plaintiffs filed this action against the School District and several of its employees asserting claims for fraud, tortious interference with contract, breach of contract, negligence per se, and violations of the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), the Georgia Racketeer

Influenced and Corrupt Organizations Act, O.C.G.A. § 16-14-1 *et seq.* ("Georgia RICO"), 42 U.S.C. § 1981 ("§ 1981"), 42 U.S.C. § 1983 ("§ 1983"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").

Defendants seek dismissal of most of Plaintiffs' claims contending that they are barred by the applicable statute of limitations or that they fail to state a claim upon which relief may be granted. *See* Defs. Muscogee County School District, Don A. Cooper, Jr., Carol French, Marie Stringfellow, and Jerry Duck's (collectively, "School District Defendants") Mot. to Dismiss, ECF No. 56 [hereinafter School District Defs.' Mot. to Dismiss]; Defs. Kinard Latham and Thomas Shellnutt's Mot. to Dismiss, ECF No. 59 [hereinafter Defs. Latham & Shellnutt's Mot. to Dismiss]. As explained in the following discussion, the Court finds that Plaintiffs' claims, as alleged in their Second Amended Complaint, are not barred by the statute of limitations. The Court does find, however, that the following claims must be dismissed because they fail to state a claim upon which relief may be granted: (1) Plaintiffs' negligence per se claims; (2) Plaintiffs' federal RICO claims; (3) Plaintiff's Georgia RICO claims; and (4) Plaintiff Brantley's Title VII claims against the individual Defendants. The following claims remain pending: (1) Plaintiffs' fraud claims; (2) Plaintiffs' tortious interference with contract claims; (3) Plaintiffs' breach of

3

contract claims against the School District; (4) Plaintiffs' §
1981 claims; (5) Plaintiffs' § 1983 claims; and (6) Plaintiff
Brantley's Title VII claim against the School District.

MOTION TO DISMISS STANDARD

When considering a 12(b)(6) motion to dismiss, the Court
must accept as true all facts set forth in the plaintiff's
complaint and limit its consideration to the pleadings and
exhibits attached thereto. *Bell Atl. Corp. v. Twombly*, 550 U.S.
544, 556 (2007); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949,
959 (11th Cir. 2009). "To survive a motion to dismiss, a
complaint must contain sufficient factual matter, accepted as
true, to 'state a claim to relief that is plausible on its
face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)
(quoting *Twombly*, 550 U.S. at 570). The complaint must include
sufficient factual allegations "to raise a right to relief above
the speculative level." *Twombly*, 550 U.S. at 555. "[A]
formulaic recitation of the elements of a cause of action will
not do[.]" *Id.* Although the complaint must contain factual
allegations that "raise a reasonable expectation that discovery
will reveal evidence of" the plaintiff's claims, *id.* at 556,
"Rule 12(b)(6) does not permit dismissal of a well-pleaded
complaint simply because 'it strikes a savvy judge that actual
proof of those facts is improbable,'" *Watts v. Fla. Int'l Univ.,*

495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 556).

BACKGROUND

Plaintiffs' original Complaint was a classic "shotgun" pleading disfavored by the courts.[4]    Rather than dismiss

---

[4] "Shotgun pleading" refers to an unfocused, scattered approach which makes it difficult (often impossible) for the court and the opposing parties to discern the nature of the claims being asserted.    *See Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991) (describing "quintessential 'shotgun' pleadings" complete with "rambling recitation[s]" and "factual allegations that could not possibly be material" that force the "district court [to] sift through the facts presented and decide for [itself] which were material to the particular cause of action asserted"); *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 650 n.22 (11th Cir. 2010) ("The complaint was a typical 'shotgun' pleading, in that each count incorporated by reference all preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged were not material to the claim, or cause of action, appearing in a count's heading."). Such pleadings have been universally condemned by the courts. *Thompson*, 610 F.3d at 650 n.22; *see also Pelletier*, 921 F.2d at 1518 ("Anyone schooled in the law who read these [shotgun pleading] complaints . . . would know that many of the facts alleged could not possibly be material to all of the counts.    Consequently, [the opposing party] and the district court [have] to sift through the facts presented and decide for themselves which [are] material to the particular cause of action asserted, a difficult and laborious task indeed."); *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 806 n.4 (11th Cir. 2010) ("Shotgun pleadings impede the administration of the district courts' civil dockets in countless ways . . . resulting in a massive waste of judicial and private resources") (citations and internal quotation marks omitted); *Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 979 n.54 (11th Cir. 2008) ("[S]ince 1985 we have explicitly condemned shotgun pleadings upward of fifty times."); *Beckwith v. City of Daytona Beach Shores, Fla.*, 58 F.3d 1554, 1567 (11th Cir. 1995) ("The resulting difficulty in sorting through allegations [of a 'shotgun pleading'] almost drowns a meritorious claim in a sea of marginal ones.    The bar would be better served by heeding this advice: 'In law it is a good policy never to plead what you need not, lest you oblige yourself to prove what you cannot.'") (quoting Abraham Lincoln, Letter to Usher F. Linder, Feb. 20, 1848, *in The Quotable Lawyer* 241 (D. Shrager & E. Frost eds., 1986)).

Plaintiffs' action initially, the Court held a hearing at which time it pointed out many of the deficiencies to Plaintiffs' counsel. The Court subsequently permitted Plaintiffs to file a second amended complaint. Order Granting Pls.' Mot. to Amend Compl., ECF No. 51; *see also U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1354 n.6 (11th Cir. 2006) ("When faced with a shotgun pleading, the trial court, whether or not requested to do so by the party's adversary, ought to require the party to file a repleader." (citing *Byrne v. Nezhat*, 261 F.3d 1075, 1133 (11th Cir. 2001)). Defendants' presently pending motions to dismiss are directed to that Second Amended Complaint. Accepting the allegations in Plaintiffs' Second Amended Complaint as true and construing all reasonable inferences in Plaintiffs' favor as required at this stage of the proceedings, the Court finds that Plaintiffs have alleged the following facts.

Plaintiffs are current or former physical plant employees of the School District. During their employment with the School District and dating back to 1978, the School District offered two retirement systems for eligible physical plant employees: (1) The Teachers Retirement System of Georgia ("TRS"), which offers generous retirement benefits; and (2) the Public School Employees Retirement System ("PSERS"), which offers more modest retirement benefits. In general, physical plant supervisors

6

were eligible for the more generous TRS while other non-supervisor physical plant employees were restricted to the far more modest PSERS.

This two-tiered retirement system invited manipulation by physical plant employees who sought to participate in the more generous TRS. According to Plaintiffs, white physical plant employees were permitted to manipulate their job duties and job labels to be designated as "supervisors" and thus become eligible for TRS. At the same time, similarly-situated black employees, including Plaintiffs, were not permitted to do the same thing, and in fact, were never informed of these same opportunities. Plaintiffs allege that they were assigned the duties and responsibilities of a supervisor, but were not given a supervisor's job title, grade level, or compensation. 2d Am. Compl. 13 ¶ 3, ECF No. 53. Plaintiffs also contend that they were not considered for promotions to supervisory positions at higher grade and rank levels. *Id.* at 13 ¶ 4. Accordingly, they were prevented from participating in TRS based on their race.

Plaintiffs specifically allege that the School District and School District employees Kinard Latham, Carol French, and Don A. Cooper, Jr. conspired to defraud them of compensation and retirement benefits because of their race. Plaintiffs allege that they were told that "they did not qualify for participation in TRS because their job titles did not include the words

'Supervisor' and 'Manager' and because Plaintiffs did not have hiring, firing, promotion, and reprimanding authority." *Id.* at 14 ¶ 6.  Plaintiffs subsequently discovered, on April 14, 2009, that white employees were allowed to participate in TRS if they supervised at least one person or machine. *Id.* at 15 ¶ 7. Plaintiffs also allege that Defendants fraudulently inflated white employees' job titles and identified them as supervisors so that they could participate in TRS. *See, e.g., id.* at 18-19 ¶ 15, 19 ¶ 17, 23-24 ¶ 23, 198-99 ¶ 592.

In support of their RICO claims, Plaintiffs allege that Defendants Latham, French, and thirteen named white employees conspired to falsely state on TRS applications that each respective white employee was a supervisor or manager. 2d Am. Compl. 31-37 ¶¶ 46A-46M.  Plaintiffs further allege that the "TRS application was sent to TRS through the mail and employer contributions were and are made through wire transfers." *Id.*

DISCUSSION

The Court divides its discussion into two parts.  The Court first analyzes Defendants' statute of limitations defense and determines that Plaintiffs' claims are timely.  The Court then evaluates Defendants' motion to dismiss several of Plaintiffs' claims because they fail to state a claim upon which relief may be granted and concludes that Plaintiffs' claims for negligence

8

per se, RICO, Georgia RICO, and Title VII liability against the
individual Defendants must be dismissed.

**I.   Defendants' Statute of Limitations Defense**

Defendants maintain that the following claims are barred by
the statute of limitations: (1) fraud claims asserted by
Plaintiffs Biggers, Marshall, and Richardson; (2) fraud claims
against Defendant Latham; (3) tortious interference with
contract claims asserted by Plaintiffs Biggers, Marshall, and
Richardson; (4) tortious interference with contract claims
against Defendant Latham; (5) § 1981 claims asserted by
Plaintiffs Biggers, Marshall, and Richardson; (6) § 1981 claims
against Defendants Latham and Shellnutt; (7) § 1983 claims
asserted by Plaintiffs Biggers, Marshall, and Richardson; and
(8) § 1983 claims against Defendants Latham and Shellnutt.

When statute of limitations questions arise in federal
court, the court analyzes state law to determine what statute of
limitations is applicable. *See, e.g., Dukes v. Smitherman*, 32
F.3d 535, 537 (11th Cir. 1994) (per curiam) ("Federal courts
must look to state law to determine, first, what statute of
limitations is applicable, and second, whether that limitations
period is tolled."). Dismissal of a claim "on statute of
limitations grounds is appropriate only if it is apparent from
the face of the complaint that the claim is time-barred." *Tello*

*v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 (11th Cir. 2005) (internal quotation marks omitted).

Plaintiffs filed their original Complaint in this action on July 13, 2010.  Therefore, that is the applicable date for evaluating Defendants' statute of limitations defense.

A.   Fraud Claims

Fraud claims have a four-year statute of limitations in Georgia. *Anthony v. Am. Gen. Fin. Servs., Inc.*, 287 Ga. 448, 461, 697 S.E.2d 166, 176 (2010) (citing O.C.G.A. § 9-3-31).  A fraud claim accrues when an alleged misrepresentation results in actual damages, unless the plaintiff can show that the statute should be tolled. *Hamburger v. PFM Capital Mgmt., Inc.*, 286 Ga. App. 382, 387-88 & n.21, 649 S.E.2d 779, 784 & n.21 (2007). Here, Plaintiffs allege that Biggers and Marshall were employed by the School District until 2006, and that Richardson was employed by the School District until 2004.  2d Am. Compl. 80 ¶ 193, 90 ¶ 227, 167 ¶ 476.  Plaintiffs also allege that Latham was employed by the School District until 1997.[5]  *Id.* at 11-12 ¶ 1.  Therefore, Defendants contend that the fraud claims asserted

---

[5] Defendants contend that Shellnutt retired from the School District in November 2007.  Defs. Latham & Shellnutt's Mot. to Dismiss 3; Defs. Kinard Latham & Thomas Shellnutt's Reply to Pls.' Resp. to Defs.' Mot. to Dismiss 4, ECF No. 66.  But Plaintiffs did not allege when Shellnutt retired in their Second Amended Complaint.  Therefore, it is not "apparent *from the face of the complaint*" that any claims against Shellnutt are barred by the statutes of limitations. *Tello*, 410 F.3d at 1288 (emphasis added) (internal quotation marks omitted).

by Biggers, Marshall, and Richardson, and the fraud claims asserted against Latham are barred by the four-year statute of limitations.   School District Defs.' Mot. to Dismiss 5; Defs. Latham & Shellnutt's Mot. to Dismiss 5.

Georgia law also provides, however, that "[i]f the defendant . . . [is] guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud."   O.C.G.A. § 9-3-96.   "In cases where the gravamen of the underlying cause of action is actual fraud, 'the statute of limitations is tolled until the fraud is discovered or by reasonable diligence should have been discovered.'"   *Hamburger*, 286 Ga. App. at 388, 649 S.E.2d at 784 (quoting *Shipman v. Horizon Corp.*, 245 Ga. 808, 808, 267 S.E.2d 244, 246 (1980)).   Here, Plaintiffs allege that they did not discover Defendants' fraud until April 14, 2009.   2d Am. Compl. 15 ¶ 7. ("On April 14, 2009, Defendant Latham revealed while under oath that Caucasian employees . . . were [and are] permitted to participate in the TRS because there [sic] duties and responsibilities included the supervision of at least (1) one person or the supervision of a machine.   Said MCSD Employees are similarly situation [sic] or less qualified than Plaintiffs for participation in the TRS.").   Therefore, it is not apparent from the face of the Second Amended Complaint that the fraud

11

claims asserted by Biggers, Marshall, and Richardson, or the fraud claims asserted against Latham are barred by the statute of limitations. *See Shapiro v. S. Can Co.*, 185 Ga. App. 677, 677, 365 S.E.2d 518, 520 (1988) (holding that period of limitations on plaintiff's claim that defendants fraudulently induced him to enter special pension plan "runs from the time of the plaintiff's discovery of the alleged fraud."). Accordingly, Defendants' motions to dismiss those claims are denied.

> B.   Tortious Interference with Contract Claims

Tortious interference with contract claims have a four-year statute of limitations in Georgia. *Long v. A.L. Williams & Assocs., Inc.*, 172 Ga. App. 564, 566, 323 S.E.2d 868, 870 (1984) (citing O.C.G.A. § 9-3-31). Again Defendants contend that the tortious interference with contract claims asserted by Biggers, Marshall, and Richardson, and the tortious interference with contract claims asserted against Latham are barred by the four-year statute of limitations. The question arises as to what circumstances authorize the tolling of the statute of limitations for tort claims other than fraud until the plaintiff becomes aware of the claim. Under Georgia law, "'where the gravamen of the underlying action is not a claim of fraud, . . . the statute of limitations is tolled only upon a showing of a separate independent actual fraud involving moral turpitude which deters a plaintiff from filing suit.'"

*Hamburger*, 286 Ga. App. at 388, 649 S.E.2d at 785 (quoting *Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, 269 Ga. 844, 847, 507 S.E.2d 411, 413 (1998)).   Here, Plaintiffs allege that Defendants fraudulently told them that "they did not qualify for participation in TRS because their job titles did not include the words 'Supervisor' and 'Manager,' and because Plaintiffs did not have hiring, firing, promotion, and reprimanding authority." 2d Am. Compl. 14 ¶ 6.   Plaintiffs further allege that they did not discover that Defendants' misrepresentations were false until April 14, 2009.   *Id.* at 15 ¶ 7.   Therefore, it is not apparent from the face of the Second Amended Complaint that either the tortious interference with contract claims asserted by Biggers, Marshall, and Richardson, or the tortious interference with contract claims asserted against Latham are barred by the statute of limitations.   Accordingly, Defendants' motions to dismiss those claims are denied.

C.   § 1981 Claims

The four-year federal catch-all statute of limitations, 28 U.S.C. § 1658, applies to actions arising under § 1981 as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071 ("1991 Act").   *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382-83 (2004).   A two-year "borrowed" statute of limitations applies to claims that could have been brought under § 1981 as it existed prior to the 1991 Act.   *Id.; see also*

*Hill v. Metro. Atlanta Rapid Transit Auth.*, 841 F.2d 1533, 1545-46 (11th Cir. 1988) (borrowing Georgia's two-year statute of limitations for personal injury actions).   Here, however, the Court need not determine whether Plaintiffs' claims could have been brought under § 1981 as it existed prior to the 1991 Act because, in either case, the statute of limitations commences only "when the plaintiff knows or reasonably should know that the discriminatory act has occurred."   *Stafford v. Muscogee Cnty. Bd. of Educ.*, 688 F.2d 1383, 1390 (11th Cir. 1982) (internal quotation marks omitted); *see also Hamilton v. Gen. Motors Corp.*, 606 F.2d 576, 579 (5th Cir. 1979) ("Equitable considerations may very well require that the filing periods not begin to run until facts supportive of a Title VII charge or civil rights action are or should be apparent to a reasonably prudent person similarly situated.").[6]   Here, Plaintiffs have alleged that they were not aware that Defendants defrauded them of compensation and retirement benefits because of their race until April 14, 2009.   2d Am. Compl. 15 ¶ 7.   Therefore, it is not apparent from the face of the Second Amended Complaint that either the § 1981 claims asserted by Biggers, Marshall, and Richardson, or the § 1981 claims asserted against Latham are

---

[6] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

barred by the statute of limitations.  Accordingly, Defendants'
motions to dismiss those claims are denied.

> D.   § 1983 Claims

"Federal courts apply their forum state's statute of
limitations for personal injury actions to actions brought
pursuant to 42 U.S.C. § 1983[.]" *Uboh v. Reno*, 141 F.3d 1000,
1002 (11th Cir. 1998).  But "[t]he question of when the
limitations period begins to run . . . is one of federal law."
*Id.*  Therefore, Georgia's "two-year personal injury limitations
period applies to § 1983 actions in a Georgia district court."
*Kelly v. Serna*, 87 F.3d 1235, 1238 (11th Cir. 1996); *see also*
O.C.G.A. § 9-3-33.  But § 1983 actions "do not accrue until the
plaintiff knows or has reason to know that he has been injured."
*Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987).
"Plaintiffs must know or have reason to know that they were
injured, and must be aware or should be aware of who inflicted
the injury."  *Rozar v. Mullis*, 85 F.3d 556, 562 (11th Cir.
1996); *see also Eubank v. Leslie*, 210 F. App'x 837, 841 (11th
Cir. 2006) (per curiam) ("A cause of action accrues for purposes
of determining when the statute of limitations period began to
run when the plaintiff knew or should have known of his injury
and its cause.").

Here, Plaintiffs have alleged that they were not aware that
Defendants defrauded them of compensation and retirement

benefits until April 14, 2009. 2d Am. Compl. 15 ¶ 7. Therefore, it is not apparent from the face of the Second Amended Complaint that either the § 1983 claims asserted by Biggers, Marshall, and Richardson, or the § 1983 claims asserted against Latham are barred by the statute of limitations. Accordingly, Defendants' motions to dismiss those claims are denied.

In summary, Defendants' motions to dismiss based on the statutes of limitations are denied. The Court hastens to add, however, that its ruling does not mean that Defendants may not eventually prevail on their statute of limitations defenses. The standard at the summary judgment stage, after discovery has been completed, will be different than the motion to dismiss standard that the Court must apply today.

## II. Failure to State a Claim

In addition to their statute of limitations defense, Defendants seek to dismiss the following claims because they fail to state a claim upon which relief may be granted: (1) Plaintiffs' negligence per se claim; (2) Plaintiffs' Federal RICO claim; (3) Plaintiffs' Georgia RICO claim; and (4) Plaintiff Brantley's Title VII claim against the individual Defendants.

### A.   Negligence Per Se Claim

Plaintiffs' negligence per se claims fail to state a claim upon which relief can be granted.  "Generally, negligence per se arises when a statute or ordinance is violated.  The violation of certain mandatory regulations may also amount to negligence per se if the regulations impose a legal duty."  *R & R Insulation Servs., Inc*. *v. Royal Indem. Co.*, 307 Ga. App. 419, 424, 705 S.E.2d 223, 231 (2010).  Plaintiffs have pointed to no statute or ordinance on which a claim for negligence per se could be based.  Moreover, they have provided no legal authority for the proposition that their negligence per se claim can be based on an alleged violation of the Georgia Constitution.  Although the Georgia Constitution may provide Plaintiffs with various rights and protections, the Court finds that it does not support Plaintiffs' claim for negligence per se.  Accordingly, that claim is dismissed.

### B.   Federal RICO Claims

Plaintiffs' claims under the federal RICO act also fail to state a claim upon which relief can be granted.  Plaintiffs make conclusory allegations that Defendants Latham, French, and Cooper engaged in illegal racketeering activity through an ongoing pattern of mail and wire fraud and also through the violation of 18 U.S.C. § 666, which prohibits theft from a government organization receiving federal financial assistance.

2d Am. Compl. 197 ¶¶ 588-90.   Plaintiffs' claims fail for two reasons.   First, as to the alleged violation of 18 U.S.C. § 666, such activity even if committed does not constitute "racketeering activity" under the federal RICO statute. 18 U.S.C. § 1961(1).   Furthermore, Plaintiffs' conclusory allegations that Defendants engaged in mail and wire fraud are not supported by Plaintiffs' "factual" allegations.

Plaintiffs' mail and wire fraud claims are based on Latham, French, and Cooper's alleged false statements on TRS applications that white employees were supervisors or managers. *See* 2d Am. Compl. 31-37 ¶¶ 46A-46M; *see also id.* at 198-99 ¶ 192 ("[R]acketeering activity primarily concentrated on the manipulation of government documents, job titles, job assignments, salary, wages, employee retirement contribution, MCSD matching retirement contributions and payments concerning [named white employees] to obtain creditable service plus MCSD matching retirement contributions in the Teacher's Retirement System of Georgia; a retirement plan each employee was not eligible to participate in.").   Plaintiffs, however, have not alleged sufficient facts to show that the injury for which they seek redress—lost compensation and retirement benefits—was proximately caused by Defendants' mail and wire fraud, which was directed at TRS.   Plaintiffs only allege that Defendants' misrepresentations *to TRS*—that white employees were managers or

supervisors—were made via the mails.  Plaintiffs do not allege that Defendants' misrepresentations *to them*—that "they did not qualify for participation in TRS"—involved the mails or wires. 2d Am. Compl. 14 ¶ 6.  Quite simply, Plaintiffs fail to allege that any fraud against them was via the mail or wires. Therefore, the Court finds that Plaintiffs have failed to allege that they were injured "by reason of" the alleged pattern of racketeering activity.  18 U.S.C. § 1964(c); *see also Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992) (explaining that, to state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense "not only was a 'but for' cause of his injury, but was the proximate cause as well"); *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 461 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."); *Hemi Grp., LLC v. City of New York,* 130 S. Ct. 983, 994 (2010) (RICO "is limited by the requirement of a direct causal connection between the predicate wrong and the harm.") (internal quotation marks omitted); *accord Williams v. Mohawk Indus., Inc.,* 465 F.3d 1277, 1287 (11th Cir. 2006) (per curiam) ("*Anza* makes clear that courts should scrutinize proximate causation at the pleading stage and carefully evaluate whether the injury

pled was proximately caused by the claimed RICO violations."). Accordingly, Plaintiffs' federal RICO claims are dismissed.

Since Plaintiffs' Second Amended Complaint fails to state a substantive RICO claim, Plaintiffs' RICO conspiracy claims also fail. *See* 18 U.S.C. § 1962(d); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1259, 1269 (11th Cir. 2004) (allegation that defendant conspired to commit conduct which does not constitute a RICO violation is not sufficient to state a RICO conspiracy claim).

C.   Georgia RICO Claims

Plaintiffs' claims under the Georgia RICO Act also fail to state a claim upon which relief can be granted.  Because Georgia RICO is modeled after federal RICO, Georgia courts consider federal authority to be persuasive in interpreting Georgia RICO. *Williams Gen. Corp. v. Stone*, 279 Ga. 428, 430, 614 S.E.2d 758, 760 (2005).  Georgia courts employ the *Anza* "proximate cause" standard to determine whether a plaintiff's injury is "by reason of" a RICO predicate act. *Am. Ass'n of Cab Cos., Inc. v. Parham*, 291 Ga. App. 33, 39, 661 S.E.2d 161, 166-67 (2008) (citing *Anza*, 547 U.S. at 456-57).

Plaintiffs' Georgia RICO claims are based on their allegation that Defendants Latham, French, and Cooper engaged in an ongoing pattern of mail fraud, wire fraud, theft by taking in violation of O.C.G.A. § 16-8-2, falsification of public records in violation of O.C.G.A. § 45-11-1, and violations of Georgia's

false statement provision, O.C.G.A. § 16-10-20.  2d Am. Compl. 195-96 ¶¶ 583-87.[7]  Preliminarily, the Court notes that falsification of public records is not a "racketeering activity" under the Georgia RICO statute.  O.C.G.A. § 16-14-3(9). Therefore, the Court only considers Plaintiffs' allegations that Defendants Latham, French, and Cooper engaged in an ongoing pattern of mail fraud, wire fraud, theft by taking, and violations of Georgia's false statement provision in evaluating their Georgia RICO claims.

As explained above, the Court finds that Plaintiffs have not sufficiently alleged that their injuries were "by reason of" any alleged mail or wire fraud.  Accordingly, Plaintiffs' Georgia RICO claims based on mail and wire fraud are dismissed.

Plaintiffs have also failed to sufficiently allege that their injuries were "by reason of" Defendants' alleged theft by taking.  Under Georgia law, "[a] person commits the offense of theft by taking when he unlawfully takes . . . any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated."  O.C.G.A. § 16-8-2.  Here, Plaintiffs have not

---

[7] As explained above, a violation of 18 U.S.C. § 666 is not a "racketeering activity" under the federal RICO statute. 18 U.S.C. § 1961(1).  Therefore, it is likewise an improper basis for a Georgia RICO claim.  *See* O.C.G.A. § 16-14-3(9)(A)(xxix) (defining "Racketeering activity" under the Georgia RICO statute to include any conduct defined as racketeering activity under the federal RICO statute).

alleged that Defendants took their property.  Plaintiffs have only alleged that Defendants defrauded them by misrepresenting their eligibility for TRS, thereby preventing them from obtaining more generous compensation and retirement benefits. To the extent Plaintiffs' theft by taking claims are based on Defendants' alleged misrepresentations to TRS regarding white employees, Plaintiffs have failed to sufficiently allege that *their* injuries were "by reason of" those statements *to TRS*. Therefore, Plaintiffs' Georgia RICO claims based on theft by taking are dismissed.

Finally, Plaintiffs have failed to sufficiently allege that their injuries were "by reason of" Defendants' violations of Georgia's false statement provision.  That statute prohibits the making of false statements in any manner "within the jurisdiction of any department or agency of state government or of the government of any county, city, or other political subdivision of this state." O.C.G.A. § 16-10-20.  Here, Plaintiffs' only allegations that Defendants made false statements "within the jurisdiction of any department or agency of state government" were that Defendants made false statements that white employees were supervisors or managers on TRS applications.  As explained above, Plaintiffs have not sufficiently alleged that *their* injuries were "by reason of" those allegedly false statements.  Therefore, Plaintiffs'

Georgia RICO claims based on Georgia's false statement provision are dismissed.

### D.   Plaintiff Brantley's Title VII Claims Against Individual Defendants

The only Title VII claims asserted in the Second Amended Complaint are by Carlton Brantley. 2d Am. Compl. 190-91 ¶¶ 569-71. To the extent that Brantley asserts his Title VII claims against any individual Defendant, Defendants seek dismissal of those claims. It is well settled that "'[t]he relief granted under Title VII is against the employer, not [against] individual employees whose actions would constitute a violation of the Act.'" *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006) (alterations in original) (quoting *Hinson v. Clinch Cnty. Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000)). "Individual capacity suits under Title VII are . . . inappropriate." *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) (per curiam). Therefore, Brantley cannot bring Title VII claims against the individual Defendants. Accordingly, Brantley's Title VII claims against the individual Defendants are dismissed. Brantley's Title VII claims against the School District remain pending.

### CONCLUSION

The School District Defendants' Motion to Dismiss (ECF No. 56) and Defendants Kinard Latham and Thomas Shellnutt's Motion

to Dismiss (ECF No. 59) are granted in part and denied in part. The following claims are dismissed: (1) Plaintiffs' negligence per se claims; (2) Plaintiffs' federal RICO claims; (3) Plaintiffs' Georgia RICO claims; and (4) Brantley's Title VII claims against individual Defendants.   The following claims remain pending: (1) Plaintiffs' fraud claims; (2) Plaintiffs' tortious interference with contract claims; (3) Plaintiffs' breach of contract claims against the School District; (4) Plaintiffs' § 1981 claims; (5) Plaintiffs' § 1983 claims; and (6) Plaintiff Brantley's Title VII claim against the School District.

IT IS SO ORDERED, this 24th day of August, 2011.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE